IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR00369 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER GALASZEWSKI, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel, David M. Toepfer, United States Attorney, and Margaret A. Kane, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant, Christopher Galaszewski ("Galaszewski"). For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence within the applicable Guidelines range is appropriate in this case.

On October 2, 2024, the grand jury indicted Galaszewski on one count of Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (R. 1: Indictment, PageID 1-2). Galaszewski pled guilty to Counts 1 and 2 of the Indictment without a written plea agreement on May 13, 2025. (R. 22: Presentence Investigation Report, PageID 85).

On Count 1, Galaszewski faces a mandatory minimum term of imprisonment of 15 years and a maximum of 40 years in prison; a fine of $250,000; Supervised release for a minimum of

five years and up to life; and special assessments of $100, $5,000[1], and an additional $35,000[2]. Id., PageID 96). On Count 2, Galaszewski faces a mandatory minimum term of imprisonment of 10 years and a maximum of 20 years, and special assessments of $100, $5,000[3], and an additional $17,000[4]. (Id.). These increased penalties to the mandatory minimum and maximum terms of imprisonment are due to Galaszewski's prior conviction for Gross Sexual Imposition (O.R.C. § 2907.05(A)(4)) and Abduction in CR-17-616865, involving a twelve-year old victim. (Id., PageID 89).

18 U.S.C. § 2252(a)(b)(1) provides that "[w]hoever violates . . . paragraph (1), (2), or (3) of subsection (a) and has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . such person shall be imprisoned for not less than 15 years nor more than 40 years." 18 U.S.C. § 2246(3) defines sexual contact as "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with the intent to abuse, humiliate, harass, degrade, or around or gratify the sexual desire of any person. O.R.C. § 2907.05(A)(4) states that, "No person shall have sexual contact with another . . . when the other person is less than thirteen years of age." Galaszewski was convicted of this subsection which involves the abusive sexual conduct of a minor. The PSR therefore properly finds that he is subject to the increased penalties.

---

[1] Pursuant to the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014 (subject to Court's determination of indigency).

[2] Pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), 18 U.S.C. § 2259A. Based on the Court's consideration of factors in 18 U.S.C. § 3553(a) and 3572.

[3] Pursuant to the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014 (subject to Court's determination of indigency).

[4] Pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), 18 U.S.C. § 2259A. Based on the Court's consideration of factors in 18 U.S.C. § 3553(a) and 3572.

According to the Presentence Investigation Report ("PSR"), Galaszewski's offense level is 33 after acceptance of responsibility and he has a criminal history category of II. Based on these calculations, Galaszewski's advisory guideline imprisonment range is 151-188 months. (R. 22: PSR, PageID 96). Because the mandatory minimum term of imprisonment is fifteen years, the guideline range is 180-188 months. The government agrees with these calculations.

**I.  FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of Galaszewski's conduct, which is more fully set forth in the PSR. (Id., PageID 85-87).

    1.    **GALASZEWSKI SHARED CHILD PORNOGRAPHY WITH OTHER LIKE-MINDED INDIVIDUALS IN CHAT ROOMS**

In September 2023, police learned that Galaszewski used multiple online chat rooms to distribute and discuss child pornography and child sexual abuse. (Id., PageID 85). Galaszewski told others in the chat room that he had sexually assaulted his five children, even though he had no children. In June and July 2023, Galaszewski posted seven images of child pornography to chat rooms. On July 18, 2023, he posted an image of a minor female and said he planned to sexually abuse the minor. (Id.).

    2.    **GALASZEWSKI POSSESSED CHILD PORNOGRAPHY WHILE HE WAS ON POST-RELEASE CONTROL AFTER SERVING A PRISON SENTENCE FOR SEXUALLY ABUSING A MINOR AND ADULT**

On November 26, 2023, Galaszewski contacted his parole officer and reported that one of his phones and his Google account were hacked. (Id.). He said he saw child pornography on his phone but did not obtain it and deleted the images. On November 28, 2023, agents recovered two cell phones and a laptop from Galaszewski. Galaszewski said there were over 100 child pornography images on the devices, some showing 8-year-old children. (Id., PageID 86).

One cell phone recovered from Galaszewski contained 105 images and two videos of child pornography.  (Id.).  Images included toddlers being raped by adults and minors being bound with cuffs and chains while displaying their genitals.  This phone also showed that Google had sent a notice to the phone on November 26, 2023, stating the account had been disabled due to child sexual abuse material being present.  (Id.).  That same day, Galaszewski sent a text message to "C Blue" that said, "I am going to prison".  Other items found on the phone showed that Galaszewski regularly used the cell phone and there was no evidence that the phone had been hacked.

Galaszewski also possessed 41 images and one video of child pornography in his Google account.  (Id.).  He had emailed these images between two different email addresses.  Galaszewski also uploaded two images and one video of child pornography to an online Dropbox account linked to his email address.  (Id.).

## II. APPLICABLE LEGAL STANDARDS – PRECEDENT FOR GUIDELINE SENTENCE

The United States requests a Guideline sentence for Galaszewski, consistent with the law and research highlighting the dangers posed by child pornography offenders.  Numerous courts have emphatically expressed the wretched consequences of child pornography.  For example, the court in United States v. Cunningham, 680 F.Supp. 2d 844 (N.D. Ohio 2010), noted:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of

> defendants, sorry that their actions were discovered by law enforcement.
>
> The exploitation of children is a pandemic. The most vulnerable members of our society have been exploited and discarded. Those who traffic in or consume child pornography must be punished severely. Indeed, the Supreme Court has recognized that punishing child pornography consumers is a compelling state interest. See Osborne v. Ohio, 495 U.S. 103 (1990).

The Sixth Circuit noted these effects of pornographic materials in United States v. Fox, No. 17-3673, 2017 WL 11546290, at *2 (6th Cir. 2017), while adding that receipt and distribution is different than just possessing the child pornography. The court reasoned that these charges involve multiple minor victims and the sharing child pornography, which inflicts greater harm on the defendant's victims. Id. Courts have also noted that "end users" who consume and collect child pornography drive the demand for others to create child pornography and harm minor victims in the process. Cunningham, 680 F. Supp.2d 844, 856 (2010). "[I]t is now difficult, if not impossible, to solve child pornography by only attaching production and distribution. Osborne, 495 U.S. 103, 110 (1990).

In United States v. Moore, 2022 WL 4374899, at *1 (6th Cir. 2022), the Sixth Circuit highlighted the severity of the child pornography and the damage it inflicts. The Court stated that child pornography is a permanent record of a child's abuse. Id. The distribution of child pornography images revictimize the child each time the image is viewed. Id.

The defendant in another case, United States v. Waldschmidt, 506 Fed.Appx 410 (6th Cir. 2012), tried to downplay his receipt of child pornography by claiming that he was not doing significant harm by downloading and sharing child pornography already on the internet. The Court firmly disagreed holding that regardless of if the defendant did not finance or create the pornography, have contact with the minor, and was not the first to upload the pornography to the

internet, still, "the downloading of child pornography re-victimizes the children in the images." Id. The court noted that the downloading of child pornography re-victimizes the children in the images. See also, United States v. Goff, 501 F.3d 250 (3d Cir. 2007) (Consumers who "merely" or "passively" receive or possess child pornography directly contribute to the continuing victimization of victims).

In United States v. Gray, 641 Fed.Appx. 462 (6th Cir 2016), the defendant claimed that children depicted in child pornography are not victimized by receipt. The Sixth Circuit repudiated that argument and stated that this was an unrealistically narrow view of the scope of harms experienced by the victims of child pornography. Id. The court noted that the dissemination of images perpetuates the producer's abuse, the images invade the privacy of child victims, and the consumer creates an economic motive to create and distribute child pornography. Id.

The children used to make child pornography often live with the knowledge that there are numerous unknown individuals in the world who are sexually gratifying themselves with pictures of the worst moments of the children's lives, and that such exploitation will continue indefinitely. United States v. Blinkinsop, 606 F.3d 1110, 1118 (9th Cir. 2010). In New York v. Ferber, 458 U.S. 747, 759, (1982) the Supreme Court stated: "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Consumers of child pornography such as Galaszewski create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. Any exchange or payments for child pornography directly support "a sordid industry that

thrives on the sexual abuse of children." United States v. Robinson, 778 F.3d 515, 520 (6th Cir. 2015). "The greater the customer demand for child pornography, the more that will be produced." Id. Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children.

**III.     SENTENCING GUIDELINES COMPUTATION**

The Government agrees with the offense level computation contained in the PSR and Galaszewski does not object. (R. 22: PSR, PageID 87-88). Galaszewski did not object to any of the enhancements listed in the report. (Id., PageID 105). The government therefore requests that the offense level computation listed in the PSR be adopted by the Court. Galaszewski's total offense level is properly calculated as 33 after acceptance of responsibility. (Id.). Based on a total offense level of 33 and a criminal history category of II, Galaszewski's advisory guideline imprisonment range is 151-188 months. However, due to the mandatory minimum term of imprisonment being 15 years, the guideline range becomes 180-188 months. (Id., PageID 96).

**IV.     APPLICATION OF § 3553(A) FACTORS**

    **A.     NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The Government refers to the Statement of Facts section herein and Defendant's PSR for descriptions of the nature and circumstances of the offenses in the case at bar.

Galaszewski's actions harmed children even though he did not commit hands on offenses. Actual real minor children were sexually assaulted and victimized in the creation of the images Galaszewski possessed. If there were no demand for this type of material and people like Galaszewski did not consume this material, there would be no market for others to produce it. Galaszewski's actions create a demand for child pornography and encourage others to continue to sexually assault minor victims to create the images and videos. These victims will continue for

years to be revictimized as individuals like Galaszewski continue downloading and viewing their abuse for their own sexual gratification.

Galaszewski possessed awful images of child pornography including images showing a toddler being raped and minors bound with cuffs and chains.  (Id., PageID 86).  His conduct even went beyond viewing and saving child pornography.  He participated in chat rooms and shared images of child pornography with other like-minded individuals. (Id., PageID 85).  He also tried to gain credibility in these chat rooms by saying he planned to have sex with a minor he sent a photograph of and claimed to have sexually assaulted his five children when these children did not exist.  He also tried to conceal his activity by making up the story to his probation officer that someone had hacked his phone.  (Id., PageID 85-86).  Galaszewski's actions show that he seeks out other people interested in child pornography and even discusses sexually abusing minors.  Galaszewski continued to engage in this activity even after serving prison time for hands on sex offenses and while on post-release-control supervision.  The conduct suggest that Galaszewski is unable and unwilling to stop downloading or consuming child pornography and is not deterred by prison sentences or court supervision.

      B.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Galaszewski has two prior convictions for hands on sexual offenses.  His conduct shows that he continues to have a sexual interest in children and continues to collect and view images of child pornography.  He was not deterred by prior prison terms and continued to violate once released onto parole supervision, including the instant offense.  Galaszewski's criminal record and pattern of parole violations show that a lengthy guideline sentence is appropriate and necessary in this case.

In 2017, when he was 18 years old, Galaszewski grabbed the breasts and buttocks of a twelve-year old victim multiple times even though the victim repeatedly said no. (R. 22: PSR,

PageID 90). He had been living with the minor for several months and babysat the victim. Galaszewski was convicted of Gross Sexual Imposition and Abduction and sentenced to four years in prison.

In the same month he sexually assaulted this twelve-year old female, Galaszewski also raped a former girlfriend. From November 2016 through February of 2017, Galaszewski forced the victim to have sex with him when she was 21 to 22 years old. (Id.). The victim stated that Galaszewski threatened to kill her if she told police about the abuse. Galaszewski was sentenced to serve four months in prison on the same date that he was sentenced in his Gross Sexual Imposition and Abduction case. (Id.).

While incarcerated, Galaszewski worked, obtained a GED, and completed educational and sex offender training programs. However, he also had multiple violations for using drugs or intoxicating substances, fighting, stealing, disobeying direct orders, and other infractions. (Id.). When he was released from prison, he was on parole supervision and violated numerous times and served two prison terms for violating. (Id.). Galaszewski's violations included having contact with minors, viewing pornography, and possessing a weapon. He was on supervision when he committed the instant offense and possessed child pornography. (Id.).

The Court should also consider other details of Galaszewski's upbringing in reaching a sentence consistent with the § 3553(a) factors. However, any mitigating factors are outweighed by his two prior convictions involving hands on sexual abuse. Galaszewski was raised mainly by his father and grandmother who abused alcohol daily. (Id., PageID 91). His mother suffered from various mental health issues. Galaszewski was never abused during his childhood. (Id.). Galaszewski is in "average" health and suffers from occasional asthma and arthritis. He has a history of mental health diagnoses including ADHD, PTSD, oppositional defiant disorder,

communication disorder, phonological disorder, depression, anxiety, and bipolar disorder. (Id., PageID 93). He made multiple suicide attempts between the ages of 14 and 17 but denied current suicidal thoughts or ideations and last had any of these thoughts two years ago. (Id.). He is currently on mental health medications and participates in bi-weekly therapy. (Id.).

Galaszewski denied any substance abuse history. (Id., PageID 94). Prior reports state he consumed opiates on a weekly basis from ages 18-24 and used heroin and cocaine weekly while he was previously incarcerated. (Id.). Records show Galaszewski was previously diagnosed with moderate opioid use disorder, severe alcohol use disorder, severe amphetamine use disorder, severe opioid use disorder, and severe cannabis use disorder. (Id.). He received treatment for these issues. Galaszewski reported he was sober since his release from prison in 2024 and he abused substances in the past because of depression. (Id).

Galaszewski "just stopped going" to high school in the 11th grade and dropped out. (Id., PageID 95). He had individualized education plans while in school and had a history of learning and developmental disorders. (Id). He obtained his GED while in custody and had vocational training in plumbing and welding. Prior to his incarceration, Galaszewski was unemployed, and his father supported him. (Id.).

While Galaszewski may have some mitigating material in his background, they do not justify a sentence at the low end of the guidelines given Galaszewski's prior offenses. He has two separate convictions for hands on sex offenses, one involving a minor. He committed this offense and possessed child pornography even while on post-release control supervision. Galaszewski's sexual interest in children was not deterred by a prison sentence or parole supervision. A lengthy prison sentence is necessary to protect the public from Galaszewski committing further crimes.

    C.    <u>NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT</u>

A reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence. <u>United States v. Bistline</u>, 665 F.3d 758, 767-68 (6th Cir. 2012). Congress has plainly indicated that "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse." [5] The words of Congress and many courts echo the victims themselves. For many victims, the downloading of images is just as traumatic as the initial act of abuse. These victims' express embarrassment of being depicted in these extremely vulnerable situations. They also express fear of being watched and subsequently recognized by people like Galaszewski who fixate on videos and images of them.

Galaszewski committed child exploitation offenses in the comfort and privacy of his own home, and he alone is responsible for his actions and the impact they have had on the children depicted in those images. He alone obtained child pornography, collected it, and then saved the perverse material to his devices and social media accounts.

    D.    <u>NEED FOR SENTENCE TO AFFORD ADEQUATE DETERRENCE</u>

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.[6] The Sixth Circuit has

---

[5] 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).

[6] <u>United States v. Irey</u>, 612 F.3d 1160, 1206 (<u>citing</u> <u>New York v. Ferber</u>, 458 U.S. 747, 760 (1982)) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); <u>Osbourne v. Ohio</u>, 495 U.S. 103, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); <u>United States v. Goff,</u> 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); <u>United States v. Barevich</u>, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it. Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children.).

reasoned, "Moreover, as we have told sentencing courts *repeatedly*, 'general deterrence is crucial in the child pornography context' to protect the public by deterring the market for such products and activities." United States v. Schrank, 768 Fed.Appx. 512, 515 (6th Cir. 2019).

In fact, the Schrank Court reversed a district court opinion that failed to see any importance in general deterrence. Id. The district court sentenced Schrank to 12 months of home confinement by varying downward by 97 months from the bottom on the advisory guideline range. Id. The Court held that the district's court sentence was substantively unreasonable and the court's weighing of the § 3553(a) factors with the facts of the case could not justify such a significant downward variance. Id. The Court noted that it has instructed sentencing courts repeatedly that "general deterrence is crucial in the child pornography context" to protect the public by deterring the market for such products and activities. Id., at 514.

A sentence below the advisory guideline would fail to deter similar offenders or those contemplating such heinous offenses. These offenders communicate with each other via the Internet or encrypted applications, and they are concerned enough about law enforcement that they encrypt their hard drives, seek foreign websites, and use anonymous phone apps in an effort to prevent detection. A significant sentence increases safety for children.

V. **MONETARY PENALTIES**

    A.     FINE

The PSR finds that Galaszewski does not have the ability to pay a fine in this case and the United States agrees, but requests that the Court orders him to pay special assessments through the JVTA and AVAA.

    B.     18 U.S.C. § 3014 ADDITIONAL SPECIAL ASSESSMENT

Galaszewski is also subject to a mandatory $5,000 Additional Special Assessment per Count under 18 U.S.C. § 3014. The statute states, in pertinent part:

> Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2021, in addition to the assessment imposed under section 3013, **the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under**—
>
> (1) chapter 77 (relating to peonage, slavery, and trafficking in persons);
>
> (2) chapter 109A (relating to sexual abuse);
>
> **(3) chapter 110 (relating to sexual exploitation and other abuse of children)**;
>
> (4) chapter 117 (relating to transportation for illegal sexual activity and related crimes)....

18 U.S.C. § 3014(a) (emphasis added).  These assessments are deposited in the Domestic Trafficking Victims' Fund and awarded as grants or enhanced programming for victims pursuant to 18 U.S.C. §§ 3014(c) and (e)(1).  Because Galaszewski has been convicted of an offense under Chapter 110, the Court must impose this additional special assessment unless it finds he is unable to pay; however, both Defendant's current and future financial status is to be evaluated when making the indigency determination under § 3014.[7]  Even a negative net worth at the time of sentencing is not dispositive of the issue.[8]  If "at some point" a defendant would be able to pay the Additional Special Assessment, "[t]his ability to earn money in the future preclude[s] a finding of indigence for purposes of § 3014."[9] Galaszewski is not in that financial position and has an ability to pay.

The Court should consider that Galaszewski obtained a GED and vocational training in plumbing and welding while incarcerated.  (R. 22:  PSR, PageID 95).  He is twenty-seven years

---

[7] See United States v. Shepherd, 922 F.3d 753 (6th Cir. 2019).  See also United States v. Janatsch, 722 Fed.Appx 806, 810-11 (10th Cir. 2018).

[8] United States v. Kelley, 861 F.3d 790, 801-802 (8th Cir. 2017).

[9] Id.

old and has no disabilities preventing him from working. Additionally, he can participate in the IFRP while incarcerated, which affords him the future ability to pay the additional special assessment. Therefore, Galaszewski should be ordered to pay the $5,000 additional special assessment under the JVTA.

      C.      THE AMY, VICKY, AND ANDY CHILD PORNOGRAPHY VICTIM ASSISTANCE ACT OF 2018 (AVAA) GENERALLY

The *Amy, Vicky, and Andy Child Pornography Victim Assistance Act* of 2018 (AVAA), enacted on December 7, 2018, made a number of changes to existing child pornography laws, specifically with regard to restitution. Specifically, the law: (1) provides that restitution must be ordered for all "child pornography trafficking offenses" of no less than $3,000 per victim; (2) imposes a new special assessment for those defendants who are convicted of certain child pornography related offenses; (3) permits victims of child pornography trafficking offenses to seek a one-time payment of $35,000 from a reserve fund; (4) amends the definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2); and (5) adds 18 U.S.C. § 3509(m)(3), which allows victims, their attorneys, and any purported expert to access a victim's own sexually explicit images during any criminal proceeding. Of particular importance in this case is the provision that sets a <u>floor</u> of $3,000 in restitution to the victims depicted in the Defendant's images that have submitted a claim for a monetary loss.

In addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess (1) not more than $17,000 on any person convicted of an offense under 18 U.S.C. § 2252(a)(4) or §2252A(a)(5) and (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography. The court shall consider the factors in 18 U.S.C.§ 3553(a) and 18 U.S.C. § 3572 when ordering this assessment. 18 U.S.C. § 2259A. Here,

Galaszewski could be assessed up to $35,000 for his conduct in Count 1 and $17,000 for Count 2. The government defers to the Court as to the amount ordered.

        D.      RESTITUTION REQUESTS IN THIS CASE

There were no restitution requests made by any of the victims in this case. The Government is not seeking any restitution orders.

**VI.    CONCLUSION**

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that this Court impose a sentence within the sentencing guideline range to include a fifteen-year mandatory minimum sentence.

                            Respectfully submitted,

                            DAVID M. TOEPFER
                            United States Attorney

        By:    /s/ Margaret A. Kane
                Margaret A. Kane (OH: 0082084)
                Assistant U.S. Attorney
                801 West Superior Avenue, Suite 400
                Cleveland, Ohio 44113
                Tel. No. (216) 622-3624
                E-mail: Margaret.Kane@usdoj.gov